**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340



**WILLIAM J. MARTINI**
    **JUDGE**

# LETTER OPINION

June 17, 2010

Gregory R. Preston
Preston Wilkins & Martin, Esqs.
76 South Orange Avenue
Suite 300
South Orange, NJ 07079
    *(Attorneys for Plaintiff Dr. William Carr)*

Matthew A. Sapienza
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    *(Attorneys for Defendants State of New Jersey, Superior Court of New Jersey, New Jersey Judiciary, Peter Conerly, and Collins E. Ijoma)*

    Re:   *Carr v. State of New Jersey, et al.*
          Civil Action No. 09-913 (WJM)

Dear Counsel:

    This matter comes before the Court on the motion for partial dismissal filed by Defendants the State of New Jersey, the Superior Court of New Jersey, and the New Jersey Judiciary (the "Entity Defendants"), and Peter Conerly and Collins E. Ijoma (the "Individual Defendants") (all together, "Defendants").  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, the motion is **GRANTED** and the claims discussed below are **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

Plaintiff is an African-American male employed by the Probation Division of the New Jersey Judiciary who was born in the United States. (Plaintiff's Amended Complaint ("Am. Cmplt.") ¶¶ 3, 12-23). He holds multiple degrees and certifications from various institutes of higher education and professional organizations. (*Id.* at ¶¶ 13-14). He was first hired by the New Jersey Judiciary in 1973 and to date has received several promotions and commendations. (*Id.* at ¶¶ 12, 15-19). His current title is Vicinage Assistant Chief Probation Officer. (*Id.* at ¶ 18). Plaintiff previously filed a discrimination suit against the Probation Division in approximately 2000 when he was denied a promotion to his current position, but he was ultimately given the promotion and withdrew the lawsuit. (*Id.* at ¶¶ 43-44).

In June 2006, the Chief Probation Officer took a leave of absence and Plaintiff was temporarily assigned to fulfill the duties associated with the position. (*Id.* at ¶ 23). Plaintiff subsequently received a commendation for his successful performance in the role. (*Id.*). In December 2006, the Chief Probation Officer position became open, and the Probation Division began to interview candidates. (*Id.* at ¶ 23). Plaintiff was one of eight individuals considered for the position. (*Id.* at ¶ 24). He interviewed before an "all white interview panel" and was not called back for a second round. (*Id.* at ¶¶ 26-27). He received official notice on June 14, 2007 that he had not been chosen for the position. (*Id.* at ¶ 27). Plaintiff alleges that Defendant Collins Ijoma ("Ijoma") was a "key decision maker in the decision not to promote" him but does not state the basis for this belief or provide any factual details about what, if any, role Mr. Ijoma played in the process. (*Id.* at ¶ 37). The Chief Probation Officer position was ultimately given to a Caucasian male, Chris Stanecki ("Stanecki"), whom Plaintiff alleges had fewer qualifications and less experience. (*Id.* at ¶ 28).

On November 13, 2007, Plaintiff filed an Intake Questionnaire (the "Intake Questionnaire") with the Equal Employment Opportunity Commission ("EEOC"). (Plaintiff's EEOC Intake Questionnaire, attached as Exhibit C to Plaintiff's Cross Motion to Amend the Complaint ("Exh. C to Pl. Mt. to Am.")). On the Intake Questionnaire, Plaintiff checked off the boxes alleging employment discrimination claims related to race, sex, national origin, and retaliation. (*Id.*). On January 24, 2008, Plaintiff filed a Charge of Discrimination (the "Charge") with the EEOC. (Plaintiff's Charge, attached as Exhibit C to the Certification of Matthew Sapienza ("Exh. C to Sapienza Certif."). The Charge complained of race discrimination and retaliation. (*Id.*). It did not mention sex or national origin discrimination. Plaintiff subsequently met with the EEOC, and on December 8, 2008, he received a Notice of Right to Sue. (Am. Cmplt. ¶ 10).

Plaintiff filed a complaint with the district court in March 2009. (CM/ECF Docket Entry No. 1). He then moved to amend the complaint in September 2009 and was granted leave to do so. (*Id.* at No. 9). The gravamen of the Amended Complaint is that Plaintiff was denied a promotion on account of his race and national original and in retaliation for his previous filing of a discrimination lawsuit. Specifically, the Amended Complaint alleges (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), and the New Jersey Law Against

Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, et seq., (2) national origin discrimination in violation of Title VII, § 1983, and NJLAD, and (3) retaliation for the filing of a previous discrimination suit, in violation of Title VII, § 1983, and NJLAD.

At present, Defendants move to dismiss (1) the Title VII claims against the Individual Defendants, (2) the § 1983 claims against the Entity Defendants and the Individual Defendants in their official capacities, (3) the NJLAD claims against the Entity Defendants and the Individual Defendants in their official capacities, and (4) the remainder of the national origin claims. Plaintiff consents to the dismissal of the first three categories of claims. (Plaintiff's Opposition Brief ("Pl. Opp. Br.") at 7-8). Therefore, the only issue for the Court to decide is whether Defendants are entitled to a dismissal of the remaining national origin claims, namely those brought against the Entity Defendants and the Individual Defendants in their official capacities pursuant to Title VII, against the Individual Defendants in their individual capacities pursuant to § 1983, and against the Individual Defendants in their individual capacities pursuant to the NJLAD.

Defendants argue that the national origin claims should be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies and failure to assert a prima facie case. (Defendants' Brief ("Def. Br.") at 7).

## II.  ANALYSIS
### A.  Standard of Review

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id*. at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

> **B.  Failure to Exhaust Administrative Remedies (with respect to Title VII claims only)**

A party seeking to bring an employment discrimination claim in federal court under Title VII must comply with the procedural requirements set out in 42 U.S.C. § 2000e-5.  42 U.S.C. § 2000e-5.  Therefore, before filing a lawsuit, a Title VII plaintiff must first complete and file an EEOC Intake Questionnaire and a Charge of Discrimination.  *Id*. §§ 2000e-5(b), (e)(1), (f)(1); *Hicks v. ABT Associates, Inc*., 572 F.2d 960, 963 (3d Cir. 1978).   Both the Intake Questionnaire and the Charge are standard form documents containing a list of recognized disability claims (race, sex, age, disability, national origin, color, religion, retaliation, and pregnancy), an empty checkbox that corresponds to each listed claim type for the party to check off if applicable, and additional space to provide a more in-depth explanation.  (*See* Exh. C to Pl. Mt. to Am.; Exh. C to Sapienza Certif.).  After the documents are filed, the EEOC will investigate the claims made in the Charge, attempt to engage in conciliatory processes, and if it sees fit, issue a Right to Sue Letter.  *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001).  A plaintiff cannot proceed in the district court without a Right to Sue Letter, and the ensuing suit is limited to the claims that are within the scope of the Charge.  *See Hicks*, 572 F.2d at 963; *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

Here, it is undisputed that Plaintiff did not fulfill these administrative requirements with respect to his national origin discrimination claim (despite having done so with respect to his retaliation claim and most likely his race discrimination claim as well). (see Pl. Opp. Br. at 5).  On his Intake Questionnaire, Plaintiff checked off the box for National Origin Discrimination, among others.  (*See* Ex. C. to Pl. Mt. to Am.).  However, the completed Charge filled out and filed by Plaintiff contains no mention of national origin discrimination whatsoever—the box is not checked off and in the descriptive paragraph provided by Plaintiff, he mentions race and retaliation claims in depth but does not reference national origin discrimination at all.  (*See* Exh. C to Sapienza Certif.).

The claims that may be included in a Title VII plaintiff's civil lawsuit are not strictly limited to those checked off in the box section on the front page of the Charge, nor even to the specific claims that the EEOC investigated pursuant to the Charge.  *See Hicks*, 572 F.2d at 963, 966.  Rather, the permitted scope of the lawsuit is any claim that should have been included in a reasonable investigation conducted by the EEOC, based upon the information contained in the Charge.  *See Ostapowicz v. Johnson Bronze Co*., 541 F.2d 394, 398-399 (3d Cir. 1976).  Therefore, various courts have allowed plaintiffs to pursue  claims not formally alleged in the Charge, as long as the Charge contained sufficient information pointing to the claim's existence, such that the EEOC should have been alerted.  *See Anjelino v. New York Times Co*., 200 F.3d 73, 94-95 (3d Cir. 1999) (permitting a hostile work environment claim to go forward where the Charge failed to formally allege the claim but did assert that the plaintiff had been subject to an "abusive" work environment); *see Hicks*, 572 F.2d at 963 (remanding a case to the district court to determine whether, despite plaintiff's failure to check off the "sex discrimination" box, the Charge contained sufficient factual information that the EEOC should have investigated the claim anyway).  The purpose behind this liberal construction of the

Charge is to avoid punishing plaintiffs for unreasonable or less than thorough EEOC investigations. *See id*. at 966.

Here, however, the Charge contained absolutely no indication that Plaintiff wished to pursue a national origin discrimination claim. (*See* Exh. C to Sapienza Certif.). Not only was the relevant box not checked off, but the descriptive paragraph discussed race and retaliation discrimination only. (*Id.*). The Charge identified Plaintiff as a black male and Stanecki, the individual who was ultimately awarded the position, as a white male. (*Id.*). No mention was made of either of their national origins. Therefore, there is no plausible way the EEOC could have known, based upon the Charge, that Plaintiff sought to bring a national origin claim. A reasonable EEOC investigation would not have covered national origin discrimination, and therefore the Title VII national origin claims must be dismissed for failure to exhaust administrative remedies.

Plaintiff concedes that his EEOC Charge does not in any way reference a national origin claim. (Pl. Opp. Br. at 5). Nevertheless, he argues that he is entitled to include this claim in his lawsuit because in the Intake Questionnaire, which he filled out before the Charge, he did check off the box for national origin discrimination. (*Id.*). However, the Third Circuit has explicitly rejected this position, finding that a "plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself." *Barzanty v. Verizon Pennsylvania, Inc*., 2010 WL 178251, *3 (3d Cir. Jan. 20, 2010). This is because the two documents serve different purposes. The Intake Questionnaire facilitates EEOC pre-charge counseling and allows the EEOC to determine whether it has jurisdiction to pursue a claim. *Id.*, quoting *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). The Charge, on the other hand, defines the scope of the investigation and gives the employer notice. *Id.*; *see also* 42 U.S.C. § 2000e-5(b). Conflating the two prejudices the employer and hinders the EEOC's work. *See Park v. Howard Univ*., 71 F.3d 904, 909 (D.C. Cir. 1995) (treating "Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant").

Therefore, while courts may construe a Charge liberally to determine the proper scope of a reasonable EEOC investigation and the ensuing litigation, they have declined to use the Intake Questionnaire for that purpose. *Barzanty*, 2010 WL 178251, *3. Plaintiff identifies an unpublished district court decision, *Martin v. Anheuser-Busch*, 2006 WL 827850, *4 (D.N.J. March 30, 2006), in which, he argues, the court upheld claims set out in the Intake Questionnaire only and not in the Charge. *Martin v. Anheuser-Busch*, 2006 WL 827850, *4. However, not only does this district court decision pre-date *Barzanty*, the Third Circuit opinion to the contrary, but Plaintiff also overstates its holding. While the *Martin* court noted that the challenged claim had been listed in the Intake Questionnaire, there is no indication that it relied to any significant degree on this observation in making its decision to allow the claim to go forward. *Id.* Indeed, the court thoroughly examined the Charge and noted that while the final version failed to mention the disputed claim, the handwritten version of the Charge originally submitted by the plaintiff did include it. Therefore, the Court allowed the claim to go forward based not upon information from the Intake Questionnaire but upon information

5

that had once been in the Charge and had apparently been omitted from the final version due to an EEOC clerical error. *Id.* at 5. The *Martin* court also allowed the claim to go forward because it believed that the discriminatory incident as a whole was so flagrant that it should have alerted the EEOC to the specific claim. Here, there is no allegation or evidence demonstrating that Dr. Carr had at one point included national origin discrimination in his Charge and it had mistakenly been removed by the EEOC. Neither is there anything specific about the nature of the interview that could plausibly have alerted the EEOC to investigate national origin discrimination. Contrary to his assertions, Plaintiff has not identified a single instance in which a court concluded that claims listed in the Intake Questionnaire only fell within the scope of a reasonable EEOC investigation.

Finally, even if this Court did allow information from the Intake Questionnaire to determine the scope of a reasonable EEOC investigation, a national origin claim still would be beyond that scope. The Intake Questionnaire does not state the national origin of the decision makers nor of the candidate who was ultimately chosen for the position. (*See* Ex. C. to Pl. Mt. to Am.). It also identifies Plaintiff's own birthplace as the U.S., which would not typically give rise to a claim for national origin discrimination. (*Id.*). Moreover, in addition to checking the Questionnaire's box for national origin discrimination, Plaintiff also checked the box for sex discrimination (without providing any support for a claim of sex discrimination and despite identifying both himself and Stanecki as male), suggesting he was merely checking boxes haphazardly. (*Id.*). Therefore, it cannot be said that the Intake Questionnaire provided sufficient information to alert the EEOC to consider national origin discrimination in its investigation. A national origin claim is plainly not within the scope of Plaintiff's EEOC Charge. Plaintiff has failed to exhaust his administrative requirements, and as such, the Title VII National Origin claims must be dismissed.

### C.     Failure to Plead a Prima Facie Case of National Origin Discrimination

Defendants also argue that Plaintiff's claims of national origin discrimination must be dismissed for failure to plead a prima facie case. To demonstrate a prima facie case of national origin discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) he was qualified for the position for which he applied; (3) he was not selected for the position; and (4) another individual, who was not a member of the protected class, acquired the position or the position remained open. *Scheidemantle v. Slippery Rock University State System of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

Here, Defendants argue that although Plaintiff states he is a member of a protected class, he does not identify which class that is. (Def. Br. at 10). Moreover, because the Charge does not state his national origin, and the Intake Questionnaire and the Amended Complaint state that Plaintiff was born in the U.S., he does not appear to be a member of a protected class. Therefore, Defendants assert that a prima facie case has not been pleaded and the national origin claims must be dismissed. (*Id.*).

Defendants appear to be correct that Plaintiff fails to plead a prima facie case of national origin discrimination. However, the Supreme Court has held that failure to plead

6

a prima facie case in the discrimination context is not grounds for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), because to hold otherwise would be to impose a higher pleading requirement for discrimination claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Rather, the Supreme Court has held that all a discrimination claim must do is satisfy the requirements of Fed. R. Civ. P. 8(a), like most other types of claim, and provide a short and plain statement showing entitlement to relief. *Id.* at 513-514. A failure to satisfy Rule 8 is grounds for dismissal. *See* Fed. R. Civ. P. 8.

Here, there is no need for the Court to consider whether Plaintiff failed to plead a prima facie case, because it is clear that the allegations in the Amended Complaint fail to satisfy even the basic pleading requirements of Rule 8(a) and do not state a claim for which relief can be granted. Plaintiff has made no showing whatsoever that he is entitled to relief pursuant to a theory of national origin discrimination. He states that he was born in the United States but fails to identify the national origin of Stanecki, the candidate who was ultimately selected for the position, or even allege that Stanecki's national origin is different from his own.

Rather, although Plaintiff does not state this explicitly, it appears that he may be basing his national origin claims on the fact that he was born in the United States and Defendant Ijoma was born in Africa. (Am. Cmplt. ¶¶ 7, 37). However, to the extent this is Plaintiff's argument, it is misguided. At the outset, he has made nothing more than a bald assertion that Ijoma was even involved in the decision making process. (*Id.* at ¶ 37). More importantly, while the class or status of the decision maker may have some relevance in the analysis of a discrimination claim, this is true only once the basic claim itself has been shown to exist. *Iadimarco v. Runyon*, 190 F.3d 151, 156 (3d Cir. 1999) (the class status of the individual responsible for a hiring decision is insufficient, by itself, to demonstrate discrimination). Therefore, without any kind of showing that Stanecki's national origin was different from Plaintiff's, there is no claim and Ijoma's continent of birth is immaterial. The relevant inquiry is the class or status of the party who was allegedly treated more favorably, not of the decision maker. *See id.* Thus, there is no set of facts consistent with Plaintiff's allegations that could entitle him to relief. The national origin claims must be dismissed in their entirety.

### III.    CONCLUSION

For the reasons stated above, Defendants' motion for partial dismissal of the Amended Complaint is **GRANTED**. The Title VII claims against the Individual Defendants, the § 1983 claims against the Entity Defendants and the Individual Defendants in their official capacities, the NJLAD claims against the Entity Defendants and the Individual Defendants in their official capacities, and all of the national origin discrimination claims are **DISMISSED WITH PREJUDICE**.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**