UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. WILLIAM CARR,<br><br>**Plaintiff,**<br><br>v.<br><br>**STATE OF NEW JERSEY, SUPERIOR COURT OF NEW JERSEY, NEW JERSEY JUDICIARY, PETER CONORLY, and COLLINS E. IJOMA,**<br><br>**Defendants.** | Civil No. 9-913<br><br>**OPINION** |

    This action comes before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the Court will **GRANT** Defendants' motion and dismiss Plaintiff's remaining claims.

## I. PROCEDURAL AND FACTUAL HISTORY

    Plaintiff Dr. William Carr is an African-American male and was employed by Defendant New Jersey Judiciary (collectively with the State of New Jersey and the Superior Court of New Jersey, the "Entity Defendants") for approximately 35 years. In 2006, while he was employed as an Assistant Chief Probation Officer, Plaintiff applied for the position of Court Executive 2B, Chief Probation Officer, Essex Vicinage. Defendant Collins E. Ijoma, the Trial Court Administrator for the Essex Vicinage, appointed a three-person panel to conduct the first round of interviews for the position. That panel included Defendant Peter Conorly, who was the outgoing Chief Probation Office for Essex Vicinage (collectively with Defendant Ijoma, the "Individual Defendants"). Based on their review of each applicant's overall experience and qualifications for the positions, the panelists selected eight applicants, including Plaintiff, for the first round of interviews. Three of the selected applicants were African-American, including Plaintiff, four were Caucasian, and one was Hispanic. The goal of the first round of interviews

was to winnow down the pool of applicants and decide who should participate in a second round of interviews. The panel selected three individuals to participate in a second interview, but Plaintiff was not among them.

In his pleadings, Plaintiff alleges a variety of claims based on his not receiving a second interview, not all of which have survived to this stage. Plaintiff's remaining claims are for: racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against the Entity Defendants; retaliation in violation of Title VII against the Entity Defendants; racial discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.*, against the Individual Defendants; retaliation in violation of the NJLAD against the Individual Defendants; and violation of Plaintiff's Fourteenth Amendment Rights against the Individual Defendants in their individual capacities pursuant to 42 U.S.C. § 1983 for racial-discrimination.[1] Defendants now move for summary judgment on all of Plaintiff's remaining claims.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring nonmoving party for jury to return verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, the non-moving party "may not rest upon the mere

---

[1] In the Amended Complaint, the third count appears to attempt to state a claim under Section 1983 for retaliation as well. But Plaintiff has not addressed this claim at all in his briefing, instead focusing his argument with respect to Section 1983 entirely on his claim for racial discrimination. The Court thus assumes that the claim is abandoned. Even if it were not, the Court's findings below with respect to retaliation under Title VII and NJLAD would apply equally to Plaintiff's claim for retaliation under Section 1983 because Plaintiff has failed to adduce evidence of a causal connection sufficient to create a genuine issue of material fact.

allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586; *see also* Fed. R. Civ. P. 56(e)(3).

### B. Claims for Racial Discrimination Under Title VII, NJLAD, and 42 U.S.C. § 1983

Defendants argue that even if the Court were to find that Plaintiff has established a prima facie case of racial discrimination, Plaintiff has failed to adduce sufficient evidence to rebut Defendants' legitimate non-retaliatory reason for not selecting Plaintiff for a second interview. Defendants are correct.

In the absence of direct evidence of discrimination, causes of action for racial discrimination based on failure to hire under Title VII, NJLAD, and Section 1983 are subject to the same burden-shifting analysis first established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Victor v. State*, 4 A.3d 126, 140-41 (N.J. 2010) (acknowledging adoption of *McDonnell-Douglas* analysis for employment discrimination claims under NJLAD); *Stewart v. Rutgers, The State University*, 120 F.3d 426, 431-32 (3d Cir. 1997) (applying same burden-shifting analysis to racial discrimination claim under Section 1983). In order to establish a prima facie case for racial discrimination based on failure to hire, the plaintiff must show by a preponderance of the evidence that: (1) he is African-American; (2) he was qualified for the position; (3) he was not called in for second interview and thus did not receive the position; and (4) after rejection the position remained open and the employer continued to seek applications from persons of similar qualification under circumstances that raise an inference of discriminatory action. *See Sarullo v. U.S. Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003); *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 955 (N.J. 1999) (quotations omitted). The plaintiff bears the initial burden of establishing a prima facie case of discrimination, but once the plaintiff has done so, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason for its employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The burden then shifts back to the plaintiff who must point to some evidence that either the legitimate nondiscriminatory reason articulated by the defendant was merely a pretext for discrimination or that racial animus was more likely than not a motivating or determinative cause of the defendant's action. *Id.* at 764-65. In order to survive a motion for summary judgment based on evidence that the defendant's articulated reason is mere pretext, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies,

3

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (quotations omitted).

Plaintiff has produced sufficient evidence to establish his prima facie case of racial discrimination. He is African-American. He was qualified for the position, which Defendants do not meaningfully dispute.[2] He did not receive a second interview. And finally, Defendants interviewed and ultimately hired a Caucasian candidate with similar qualifications.[3]

Defendants have produced evidence, much of it undisputed, establishing that they had a legitimate, nondiscriminatory reason for not selecting Plaintiff for a second interview: he did not perform as well in the first interview as the candidates who were called for a second interview. Plaintiff admits that the panelists asked every candidate the same questions and scored every candidate based upon the candidate's responses using the same scoring scale, which assessed the candidate's competencies in five key areas: Leadership/Technical Knowledge/Cooperative Relationships; Administrative/Management/Interpersonal Skills; Communication Skills/Managing Human Resources; Customer Service; and Total Quality Management. Defendants further claim that the panelists were assessing the interviewee's ability to apply his or her background and experience in answering questions. Plaintiff admits that the interviewees' scores formed the basis of the panel's determination of who should be invited back for a second interview. Plaintiff admits that he scored a 32 out of 60 possible points while the candidates called in for a second interview all scored significantly higher: 45, 47, and 59 points, respectively. And Plaintiff admits that the panelists, including Defendant Conerly, all found that Plaintiff failed to answer the questions asked of him and instead offered responses that were "long winded", "disjointed", and "not on target". One panelist, James Agro, specifically noted that Plaintiff "failed to incorporate his vast knowledge of Probation into the responses." Poor performance in an interview is a well-recognized legitimate nondiscriminatory reason for failure

---

[2] Defendants argue that Plaintiff failed to prove that he was the "most qualified" for the position, but have adduced little evidence or case law supporting that position. At the very least, comparison of Plaintiff's record with the record of the individual ultimately hired does not establish clearly that one candidate is more qualified than the other and thus does little more than create a genuine issue of material fact that would prevent a grant for summary judgment on this claim if not for the burden-shifting analysis.

[3] The burden for establishing a prima facie case for a Section 1983 claim is slightly different than Title VII and NJLAD, requiring proof of disparate treatment based on race. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). But Plaintiff's proofs are still sufficient to meet this burden.

to hire or promote. *See, e.g.*, *Green v. Postmaster General of U.S.*, 437 F. App'x 174, 176-77 (3d Cir. 2011); *Estate of Hamilton v. City of New York*, 627 F.2d 50, 55 (2d Cir. 2010); *Conner v. Lafarge North America, Inc.*, 343 F. App'x 537, 541-42 (11th Cir. 2009); *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1143 (10th Cir. 2009).

Defendants also buttress their proffered reason by adducing evidence of Plaintiff's past performance in interviews for promotions. In 2005, Plaintiff applied for two different positions that opened up; one position was the Family Division Manager, the other was the Assistant Trial Court Administrator/General Operations Manager position. Defendant Conorly was a member of the interview panel for the Family Division Manager position, but Mr. Agro and Mr. Sebastian were not. None of the panelists from Plaintiff's 2007 interview process appear to have been involved in the interview for the Assistant Trial Court Administrator position. In each application process, Plaintiff was selected for the first round of interviews, but, after the first interview for each position, Plaintiff again was not selected for a second interview because of his interview performance. With respect to the Family Division Manager position, Defendants produced evidence suggesting Plaintiff failed to answer questions during his interview. The panelists ultimately recommended three candidates, two of which were African-American, like Plaintiff, for the second round of interviews. With respect to the Assistant Trial Court Administrator Position, Plaintiff scored lower than five other candidates. The panelists ultimately recommended three other candidates for the second round of interviews, all of whom scored higher than Plaintiff.

Plaintiff has failed to adduce evidence, disputed or otherwise, sufficient for a reasonable juror to conclude that Defendants' nondiscriminatory reason was a mere pretext or that racial animus more likely than not motivated the decision not to call Plaintiff back for a second interview. In attempting to prove pretext, Plaintiff points to three pieces of evidence. First, Plaintiff points to the comments made by the panelists on their scoring sheets during his interview and the interview of the successful candidate and notes that the comments relating to his interview do not take into account his experience but that the comments relating to the successful candidates comments do appear to account for her experience. Defendant Conerly wrote the following on his evaluation form with regards to the successful candidate: "Good responses, has experience, does lack depth of experience desired – but overall good interview." Mr. Agro wrote: "Candidate shows adequate KSA [knowledge, skills, and ability] in the categories listed. Candidate brought knowledge of current position and used experience in the examples." The third panelist, Robert Sebastian, wrote: "Good, experienced candidate – could have provided more depth to some answers. Has an excellent background and has worked on a number of statewide initiatives." When viewed

with all of the undisputed evidence, the rational reading of the panelists comments regarding Plaintiff as compared to the comments regarding the successful candidate merely suggest that the successful candidate was more able to display his experience and knowledge during the interview than Plaintiff was. This is especially clear in light of Mr. Agro's comment that Plaintiff had "failed to incorporate his vast knowledge of Probation into the responses."*See Green*, 437 F. App'x at 177. This does not rebut Defendants' argument that Plaintiff's poor interview performance drove their decision not to call him back for a second interview nor is it evidence of racial animus.[4]

Second, Plaintiff points to evidence suggesting that the panel did not include a minority, which Defendant Ijoma acknowledged in his deposition was a "good practice" but which Plaintiff has failed to show is required by any particular regulation or policy. Plaintiff fails to explain why the lack of a minority on the panel can be interpreted to undercut Defendants' nondiscriminatory reason. The only basis the Court sees for making such an inferential leap would be an assumption that non-minority panelists are not able to score the interview performance of candidates without accounting for the interviewee's race or ethnicity. This is not the kind of assumption that a rational finder of fact could make based on this record; such an assumption, unsupported by any other evidence of racial animus, would be impermissible speculation.

And third, Plaintiff points to evidence that an internal investigation at the Essex Vicinage determined that unspecified members of the management had failed to maintain the proper records as required by the Defendant Judiciary's Equal Employment Opportunity / Affirmative Action Master Plan. Specifically, the recruitment file did not contain certain information regarding the second round of interviews nor did the file show whether an officer from Defendant Judiciary's Equal Employment Opportunity / Affirmative Action office reviewed the interview questions and selection criteria. From an administrative perspective, this evidence is troubling. But it does not relate directly to the scoring procedure during the interview process. Plaintiff does not allege that the interview questions or the selection criteria were somehow inherently unfair or discriminatory. And what happened during the second round of interviews does not bear on Plaintiff's claims because he was not invited back for a second interview. Failure to follow internal

---

[4] Nor would evidence that Defendants relied solely or primarily on each candidate's interview performance rather than their qualifications and experience in deciding who to call back for a second interview tend to rebut Defendants' proffered nondiscriminatory reason. While the decision to base hiring decisions solely on interview performance may not be wise, "it does not demonstrate pretext." *Conner*, 343 F. App'x at 542 (holding employer's decision to treat all internal candidates as having equivalent qualifications and using interview process as sole measure to judge candidates did not demonstrate pretext).

6

policies regarding record keeping is not enough, alone, to rebut a well-established, legitimate, nondiscriminatory reason for an employment decision. *See, e.g.*, *Thayer v. Tyson Foods, Inc.*, 355 F. App'x 886, 890 (6th Cir. 2009) (holding failure to follow internal policies relating to termination and pre-termination investigation did not constitute evidence of pretext where procedural failures were relatively inconsequential). Especially where, as here, the failures did not have to do with Plaintiff personally, but with the entire interview process.

Even taken in sum, Plaintiff's evidence is insufficient to demonstrate the requisite weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a rational finder of fact could determine that Defendants' proffered reason for not inviting Plaintiff back for a second interview is unworthy of credence. Nor has Plaintiff adduced any evidence from which a reasonable fact finder could conclude that racial discrimination was more likely than not a motivating cause of any of Defendants' actions. Because Plaintiff has failed to carry his burden, the Court must grant summary judgment for Defendants on Plaintiff's claims for racial discrimination under Title VII and NJLAD.

### C. Claims for Retaliation Under Title VII and NJLAD

Defendants argue that Plaintiff has failed to establish a prima facie case of retaliation, or, alternatively, that Plaintiff has failed to adduce sufficient evidence to rebut Defendants' evidence that they had a legitimate non-retaliatory reason for not granting Plaintiff a second interview. The Court agrees Plaintiff has failed to establish a prima facie case and will accordingly grant Defendants summary judgment on these claims.

Again, in the absence of direct proof, Plaintiff's claims for retaliation are subject to the same burden-shifting analysis as his claims for racial discrimination. *Atkinson v. North Jersey Developmental*, 453 F. App'x 262, 265 (3d Cir. 2011); *Henry v. New Jersey Dep't of Human Servs.*, 9 A.3d 882, 888-89 (N.J. 2010). To establish a prima facie case for retaliation under either Title VII or NJLAD, a plaintiff must adduce evidence showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011) (citing *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001)). Once the plaintiff establishes a prima facie case, the defendant must come forth with evidence of a legitimate, non-retaliatory reason for the employment decision. *Henry*, 9 A.3d at 889. The burden then shifts once more to the plaintiff who must show retaliation or that the defendant's stated reason was a mere pretext. *Id.*

Plaintiff has adduced evidence sufficient to establish two of the three elements necessary for his retaliation claims. It is undisputed that in 2000, Plaintiff filed a lawsuit against Defendant New Jersey Judiciary and Defendant Conerly in connection with his failure to receive a promotion to Assistant Chief Probation Officer. The position was ultimately filled by another candidate. In 2002, two additional Assistant Chief Probation Officer positions became vacant, and Plaintiff received the promotion after agreeing to withdraw his 2000 law suit. Defendants concede that his lawsuit is a protected activity and similarly that the failure to promote is an adverse employment action.

Less clear is whether Plaintiff has adduced evidence sufficient to establish the third element – a causal connection between the protected activity and the adverse employment action. When examining evidence of causation on summary judgment, the Court should look to "evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). Unusual temporal proximity alone may be sufficient, as may be evidence of a pattern of antagonism or retaliation, or even the employer giving inconsistent reasons for a particular adverse employment action. *Id.* at 280-81. But these are only some kinds of evidence that may be sufficient, and the Court must consider all possible probative evidence. *Id.* at 281.

Plaintiff interviewed for the position at issue in this suit seven years after his protected activity, and so there is insufficient temporal proximity for the Court to find a causal connection. As alternative evidence of a causal connection, Plaintiff again points to the three pieces of evidence he raised as part of his discrimination claim that the Court discussed above. But none of these pieces of evidence provide support for finding a causal connection. With respect to the lack of a minority on the interview panel, that would not affect Plaintiff directly or personally – indeed, all of the individuals interviewed with the same panel. How this could support a finding of retaliation is unclear, nor does Plaintiff explain it. Similarly, the evidence regarding the failure to follow internal record-keeping policies affected all of the candidates, not just Plaintiff, and, thus, is not evidence of any retaliatory intent against Plaintiff. And third, the comments from the panelists merely document that the panelists thought Plaintiff performed poorly in the interview. Other than Defendant Conorly, Plaintiff has adduced no evidence that the other two candidates had any knowledge of his protected activity at the time they recorded their comments. Plaintiff also admits that as part of the interview process, the panelists completed their evaluation forms and scored the candidates independently and without discussion. Only after all of the candidates were interviewed and all of the forms were filled out did the panel members discuss the candidates. Defendant Conorly's scores and comments regarding both Plaintiff and the eventually successful candidate were very similar to the scores given and the

8

comments recorded by the other panelists with respect to each candidate. Plaintiff has produced no evidence that Defendant Conorly somehow influenced the other two panelists. In light of all of this, the comments on the evaluation forms are not evidence of any retaliatory intent or causal connection.

The only other evidence Plaintiff points to in hopes of establishing the requisite causal connection has to do with Plaintiff's past interview history, but in the light of the current record, this evidence is insufficient to create a genuine issue of material fact. As discussed above, Defendant Conerly was involved in a first-round interview panel with Plaintiff on two different occasions after Plaintiff filed a lawsuit against Conerly: first in 2005, and then in the 2007 interview that is the basis for this lawsuit. And in both instances, Plaintiff failed to receive a second interview. If this fact stood alone, a reasonable fact finder might be able to infer from this that Defendant Conerly retaliated against Plaintiff. But undisputed evidence also shows that Plaintiff interviewed in at least one other instance where Defendant Conerly was not involved and similarly failed to attain a second interview due to poor performance in the first interview. And Plaintiff has admitted that as part of the interview process for the Chief Probation Officer position, the interview panelists asked all candidates the same questions, the panelists relied on each candidate's response to those questions in evaluating the candidate, that the candidate's performance in that interview formed the basis of whether the candidate would be called back for a second interview, and that Plaintiff received lower scores than several other candidates because he gave discursive responses that did not adequately answer the questions posed. No reasonable fact finder could conclude from this record that Defendant's protected activity had any causal connection to his failure to receive a second interview. Indeed, a reasonable fact finder would have to conclude that the panelists would have reached the same decision based solely on his interview performance if he had never engaged in his protected activity,. *See Sarullo*, 352 F.3d at 800-01. Thus, the Court will grant summary judgment for Defendants on Plaintiff's retaliation claims.[5]

---

[5] Even if Plaintiff had established a prima facie case, the Court would still have to grant summary judgment for Defendants after conducting the *McDonell-Douglas* burden-shifting analysis. Defendants offer the same evidence as they did in opposition to Plaintiff's discrimination claim: Plaintiff did not receive a second interview because of his poor performance in the first interview. Defendant has not adduced sufficient evidence to either allow a reasonable fact finder to infer that retaliation was more likely than not a causal factor in the decision not to give him a second interview nor has he adduced sufficient evidence to demonstrate that Defendants' non-retaliatory reason was a mere pretext. Again, while Plaintiff was given poor interview performance marks by both interview panels of which Defendant Conerly was a member, he was also given similarly poor interview performance marks by a third panel with which Defendant Conerly had no involvement.

## III.   CONCLUSION

For the reasons discussed above, the Court grants summary judgment for Defendants on all of Plaintiff's remaining claims. Plaintiff's complaint is hereby dismissed. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**
